# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WILLIAM BURNETT,**<br><br>Plaintiff,<br><br>v.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**<br><br>and<br><br>**AMALGAMATED TRANSIT UNION LOCAL 689**,<br><br>Defendants. | Case No. 1:13-cv-01795 (CRC) |

## MEMORANDUM OPINION

Plaintiff William Burnett was fired from his job at the Washington Metropolitan Area Transit Authority ("WMATA" or "Authority") for allegedly talking on his cell phone, without using a hands-free device, while driving a personal vehicle on WMATA property. His union filed a grievance on his behalf. After WMATA denied the grievance, Burnett lost the opportunity to arbitrate his protest because the union missed the deadline to request arbitration by one day. Burnett contends that the union's tardiness breached its duty of fair representation and that his dismissal by WMATA breached its collective bargaining agreement with the union. The union moves to dismiss. Finding that Burnett has pled a plausible claim for relief, the Court denies the motion.

## I.  Background

WMATA employed Burnett as a laborer from February 2001 until his termination in June 2012. Compl. ¶¶ 2, 8. On June 13, 2012, a WMATA security officer filed a report claiming he had observed Burnett the previous night "talking on his cell phone (without a hands-free device)

1

while operating his personal vehicle" on WMATA property, in violation of the Authority's policy. Id. ¶ 4. Burnett was terminated for the infraction four days later. Id. ¶ 8. Burnett strenuously disagrees that he violated the policy. He insists that phone records indicate that his cell phone was not in use at the relevant time and that the officer could not have seen into his car on a dark night through tinted windows. Id. ¶¶ 5–7, 10.

Burnett's union, Local 689, filed a grievance with WMATA protesting his termination. WMATA subsequently denied Burnett's grievance at each of the four required administrative steps of the grievance process. On Friday, December 7, 2012, at approximately 5 p.m., a WMATA representative faxed a letter to the union offices notifying the union that the grievance had been denied at Step 4 of the process. The letter was addressed to Local 689's assistant business agent and indicated that it was being delivered "Via Fax and U. S. Mail." See Pl.'s Mot. to Allow a Resp. to Def.'s Reply ("Arbitration Award") Ex. A, at 4. The original of the letter arrived at the union's offices by mail on either Monday, December 10 or Tuesday, December 11. Id. at 5. Under its collective bargaining agreement with WMATA, the union has 60 days from "receipt" of a decision denying a grievance at Step 4 to invoke the right to an arbitration proceeding. Id. at 3. In Burnett's case, the union notified WMATA of its intent to arbitrate the grievance on February 6, 2013, 57 or 58 days after its receipt of the original denial letter in the mail, but 61 days after the arrival of the faxed letter. Hr'g. Tr. 5–6.

In the arbitration, WMATA argued that the 60-day period to request arbitration of the grievance commenced with the union's receipt of the faxed denial letter, making its February 6, 2013 arbitration notice one day late. After conducting two hearings into the circumstances of the union's handling of the fax, the arbitrator concluded in a 21-page decision that "receipt" must be measured from the time and date of the transmission of the faxed letter. The arbitrator therefore

held the arbitration notice untimely and dismissed Burnett's appeal without reaching the merits.

Burnett has now filed a "hybrid" action in this Court under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. He alleges (1) that that the union breached its duty of fair representation by failing to request arbitration of his grievance within the required 60-day time limit, and (2) that WMATA breached the collective bargaining agreement ("CBA") by unfairly terminated him for violating its cell phone policy. Only Local 689 has moved to dismiss Burnett's complaint. It argues that Burnett has not pled his duty of fair representation claim in sufficient detail and that the union's untimely request for arbitration was a result of negligence at most, which is not a sufficient basis for finding that the union breached its duty of fair representation. It also argues that Burnett has failed to plead a violation of the CBA because he would not have prevailed on the merits of his grievance even if the arbitration notice was timely.

## II.     Standards

The union's motion to dismiss should be granted if Burnett's complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In order to be entitled to obtain discovery and present evidence to support his claims, Burnett must have alleged facts that, taken as true, would establish the defendants' liability. See Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003). A complaint that pleads facts merely consistent with a defendant's liability does not cross the line between possibility and plausibility and is not entitled to relief. See Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 688 (D.C. Cir. 2009).

## III.    Analysis

In order to prevail in this "hybrid" action, Burnett must show a breach of both the duty of

fair representation by his union and breach of the CBA by the Authority. See Cephas v. MVM, Inc., 520 F.3d 480, 485 (D.C. Cir. 2008). The Court will first address Burnett's duty of fair representation allegations.

Due to their unique position as exclusive bargaining representatives for their members, unions have an obligation "to serve the interests of all members without hostility or discrimination towards any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177 (1967). Courts are expected to be highly deferential to union decisions and to overturn them only if they are "so far outside a 'wide range of reasonableness' as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (citation omitted). In order to demonstrate a breach of the duty of fair representation a party must prove that the union's actions were "arbitrary, discriminatory, or in bad faith." Plumbers & Pipe Fitters Local Union No. 32 v. NLRB, 50 F.3d 29, 31 (D.C. Cir. 1995). "The crucial elements for a claim of arbitrariness are that the union's error involved a ministerial rather than judgmental act, that there was no rational or proper basis for the union's conduct, and that the union's conduct prejudiced a strong interest of the employee." Watkins v. Commc'ns Workers of Am., Local 2336, 736 F. Supp. 1156, 1161 (D.D.C. 1990). "Mere negligence is insufficient to establish that the Union acted arbitrarily." Noble v. USPS, 537 F. Supp. 2d. 210, 216 (D.D.C. 2008).

Applying this standard in the context of the union's motion to dismiss, the Court concludes that Burnett has pled facts that, if true, would support a plausible claim that the union's failure to meet the deadline was arbitrary. Although mere negligence may not be a breach of the duty of fair representation, courts have found that a lack of timeliness in performing a ministerial act—such as scheduling a hearing or meeting a mandatory deadline—

can be a breach of the duty under certain circumstances. See, e.g., Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1273–74 (9th Cir. 1983) ("Keeping track of deadlines is a mechanical function that depends on establishing a tickler system and diligence in using it, not on special training."); Foust v. Int'l Bhd. of Elec. Workers, 572 F.2d 710, 716 (10th Cir. 1978), rev'd in part on other grounds, 442 U.S. 42 (1979) ("the perfunctory manner of handling the claim was sufficient justification for the submission of the issue of breach of duty to the jury"); Hollie v. Teamsters Local Union No. 639, 949 F. Supp. 2d 287, 297 (D.D.C. 2013) (holding that failure to schedule a hearing was a question of fact); Ferguson v. Local 689, Amalgamated Transit Union, No. 08-1030, 2010 WL 5300532, at *5 (D.D.C. Dec. 21, 2010) ("missing the deadline is a ministerial duty, which a reasonable jury could find [was] without a 'rational or proper basis'").

The union maintains that missing the deadline was a result of excusable neglect because whether a fax constituted "receipt" of the Step 4 denial letter under the CBA was "a new area for the parties and presented an issue that had not arisen previously." Def.'s Mot. to Dismiss at 7. While that might be so, Burnett points to certain findings in the arbitrator's award, which is referenced in his complaint, that could support a conclusion that the union's conduct was more than negligent. For example, the arbitrator found that the union faxed back its own reply to WMATA in the underlying proceeding, presumably assuming that a fax alone was sufficient for receipt *by WMATA*. Arbitration Award, at 14. He also noted the parties' "history of strict enforcement of the time limits" contained in the CBA, which arguably put the union on notice that it should construe "receipt" literally. Arbitration Award, at 21.

Consistent with the cases cited above, the Court declines to decide these competing factual arguments on a motion to dismiss. Either discovery will resolve any genuine dispute as to whether the union's tardiness resulted from mere negligence or the question will have to be

5

put to a jury. The complaint, as supplemented by the arbitration award, pleads sufficiently detailed factual allegations to support a claim that there was no rational or proper basis for the union's handling of this deadline.

Moving to the second prong of Burnett's hybrid action—whether his termination violated the CBA—the union argues that its motion to dismiss should be granted because Burnett's underlying grievance had no chance of success on the merits. Def.'s Mot. to Dismiss at 7–8. In support of that argument, the union attached to its motion to dismiss a hand written statement which it characterizes as an admission of the violation by Burnett during the course of WMATA's investigation of the incident. Def.'s Mot. to Dismiss at 6. As Burnett notes, however, the statement is not signed by Burnett and, even if he did provide the statement, it does not eliminate the possibility that he was using the hands free feature on his phone, contrary to the WMATA security officer's report of the incident. Burnett also alleges in his complaint that phone records will demonstrate that he was not using the phone at all at the time of the alleged violation and that it was too dark for the security officer to see into his car through the tinted windows. Compl. ¶¶ 6–7. Once again, the Court cannot resolve factual disputes such as these on a motion to dismiss. The facts alleged in Burnett's complaint, if true, paint a plausible claim that his discharge was contrary to the CBA.

## IV. Conclusion

Accordingly, WMATA's motion to dismiss is denied. The Court will issue an order consistent with this opinion.

Date: July 21, 2014

CHRISTOPHER R. COOPER
United States District Judge