**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM BURNETT,<br><br>            Plaintiff,<br><br>    v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, <u>et al.</u>,<br><br>            Defendants. | Case No. 1:13-cv-01795 (CRC) |

### **MEMORANDUM OPINION**

William Burnett was running late for work. So he did what many employees might do in his situation: As he neared the office parking lot, he used his cell phone to call his supervisor and request a few minutes grace time. Unfortunately for Mr. Burnett, he worked for the Washington Metropolitan Area Transit Authority ("WMATA"), which has a zero-tolerance policy prohibiting employees from using cell phones without a "hands-free" device while driving their personal vehicles on WMATA property. Observed using his phone by a WMATA safety officer, Burnett was written up and fired. After an unsuccessful union grievance, Burnett filed this "hybrid" action against WMATA for terminating him based on the cell-phone policy, and his union for failing to timely request arbitration of the failed grievance. All three parties have moved for summary judgment. Because there is no genuine dispute that Burnett violated WMATA's Electronic Device Policy, the Court will grant summary judgment for the defendants.

**I.    Background**

WMATA employed Burnett as a laborer until his termination in June 2012. Compl. ¶¶ 2, 8. On June 13, 2012, a WMATA safety officer filed a report claiming that he had observed Burnett the previous night "talking on his cell phone (without a hands-free device) while

1

operating his personal vehicle" on WMATA property, in violation of WMATA policy. Affidavit of Scott Kelley ("Kelley Aff.") Ex. 1. WMATA's "Electronic Device Policy" states: "Metro has a 'Zero Tolerance' policy regarding the unauthorized use of Electronic Devices while operating Metro revenue vehicles, and—unless a Hands-Free Device is used—while Operating non-revenue vehicles and personal vehicles on Metro property . . . ." Id. Ex. 2. Questioned about the incident by a WMATA official, Burnett wrote out a statement admitting that he was "using [his] cell" to "call[] a supervisor to let him know that [he] may [be] a little late . . . ." Deposition of William Burnett ("Burnett Dep.") Ex. 3; see also Deposition of Melvin Smith ("Smith Dep.") 15:16–16:3 (stating that Burnett "put together" the written statement and "submit[ted] it to [Smith]"). Burnett was terminated for the infraction two days later. Affidavit of Melvin Smith ("Smith Aff.") Ex. 3.

Burnett's union, Amalgamated Transit Union Local 689 ("Local 689"), filed a grievance challenging his termination. In a written statement supporting the grievance, Burnett again acknowledged using his cell phone. He explained that he was "in the process of calling" but "never got to speak with [his supervisor] as [he] pulled up and . . . made it to the . . . clock on time." Burnett Dep. Ex. 6. Burnett also wrote that "[t]he phone was on speaker." Id. WMATA denied the grievance at each of the four stages of the administrative process. The union then sought to compel arbitration, but the arbitrator determined that the union's arbitration request was untimely.[1]

---

[1] The circumstances surrounding the timing of Local 689's attempt to compel arbitration are set forth in detail in the Court's opinion denying the union's motion to dismiss. See Burnett v. Wash. Metro. Area Transit Auth., 58 F. Supp. 3d 104 (D.D.C. 2014).

Burnett then filed this "hybrid" action, asserting violations of both the National Labor Relations Act and the Labor Management Relations Act. His complaint alleges (1) that Local 689 breached its duty of fair representation to him by missing the deadline to arbitrate his grievance, and (2) that WMATA breached its collective bargaining agreement with the union by unfairly terminating him for violating the cell-phone policy. Burnett must prove both allegations in order to prevail. See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 67 (1981). The union previously moved to dismiss for failure to state a claim. In denying its motion, the Court found that Burnett had pled a plausible claim that the union's failure to meet the deadline was arbitrary and, therefore, constituted a breach of its duty of fair representation. Burnett, 58 F. Supp. 3d at 107–08. Moving to the second allegation, the Court identified four potential factual disputes surrounding Burnett's use of the phone that precluded a finding on the pleadings alone that Burnett's firing comported with WMATA's Electronic Device Policy. Id. at 108–09. First, the written statement that the union proffered with its motion as Burnett's admission of violating the policy was not signed by him, raising questions about its accuracy. Second, the statement left open the possibility that he was using a "hands-free" device to call his supervisor, consistent with the policy. Third, Burnett alleged in the complaint that the safety officer could not have seen him using the phone because it was dark (Burnett worked the night shift) and the windows of his car were tinted. Finally, Burnett alleged that his cell-phone billing records would show that he was not in fact using his phone during the relevant time period.

The parties thus proceeded to discovery. The safety officer, Scott Kelley, testified in his deposition that he was approaching the entrance of WMATA's New Carrolton, Maryland yard just shy of 10 p.m. on June 12, 2012. He said that he was driving about 10 miles per hour (the speed limit on the entry road) when he noticed Burnett pass him on the left, driving erratically.

According to Kelley, Burnett was holding a cell phone next to his face. Deposition of Scott Kelley ("Kelley Dep.") 37:19-21, 38:12-14. He testified that he could tell the phone was next to Burnett's face because he saw the illuminated screen through the windows of Burnett's car as it passed. Id. at 180:14, 181:14-16. The WMATA official who questioned Burnett about the incident, Melvin Smith, also gave deposition testimony. He explained that Burnett provided a written statement, and that he (Smith) signed the statement after Burnett confirmed that it was accurate. Smith Dep. at 15:21–16:3. In Burnett's deposition, Burnett's counsel asserted the Fifth Amendment privilege against self-incrimination on Burnett's behalf, and directed him not to answer any questions about the events of the evening in question.[2] Burnett Dep. 40:10-13.

Both sides moved for summary judgment at the conclusion of discovery. With his reply, Burnett also filed an affidavit in which he attests that his car windows were tinted and shut, Burnett Aff. ¶ 5; that his cell phone records indicate that his phone was not in use at the time of the incident, id. ¶ 6; that his phone itself is a hands-free device, id. ¶ 7; and that he "was not using [his] cell phone as Mr. Kelly [sic] claimed in his report," id. ¶ 7. WMATA has moved to strike Burnett's affidavit because, by invoking the Fifth Amendment in his deposition, Burnett deprived WMATA of the opportunity to examine him about the subject matter of the affidavit. The Court held a hearing on May 21, 2015.

---

[2] After asserting the privilege at the outset of the deposition, Burnett Dep. 40:10-13, Burnett later acknowledged that he in fact gave the written statement to Melvin Smith, id. 80:8-10, 80:17–81:8. Realizing that the statement was written on the night of the incident in question, Burnett's counsel objected, id. 82:9-10, and subsequently moved to strike Burnett's testimony as being within the scope of his earlier invocation of the privilege, id. at 85:6–86:10. The Court need not rule on the motion to strike because Burnett has not disputed that he gave the statement to Smith. He also admitted in his union grievance to using his cell phone to place a call to his supervisor. Burnett Dep. Ex. 6. The record therefore contains uncontested evidence, apart from Burnett's deposition testimony, that he was using his cell phone in some capacity that night.

**II.     Standards**

The Court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When . . . both parties file cross-motions for summary judgment, each must carry its own burden under the applicable legal standard." Ehrman v. United States, 429 F. Supp. 2d 61, 67 (D.D.C. 2006) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). Thus, each party "bears the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions[,] . . . admissions on files, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." Hodes v. Dep't of Treasury, 967 F. Supp. 2d 369, 372 (D.D.C. 2013) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). To defeat a motion for summary judgment, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on a particular claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Additionally, the Court "may strike from a pleading" material that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). "The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." Nwachukwu v. Karl, 216 F.R.D. 176, 178 (D.D.C. 2003) (citation omitted). Because "courts [generally] view motions to strike with disfavor," a court should carefully consider whether the "portions sought to be stricken are prejudicial" to the other parties. Id.

**II.     Standards**

The Court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When . . . both parties file cross-motions for summary judgment, each must carry its own burden under the applicable legal standard." Ehrman v. United States, 429 F. Supp. 2d 61, 67 (D.D.C. 2006) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). Thus, each party "bears the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions[,] . . . admissions on files, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." Hodes v. Dep't of Treasury, 967 F. Supp. 2d 369, 372 (D.D.C. 2013) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). To defeat a motion for summary judgment, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on a particular claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Additionally, the Court "may strike from a pleading" material that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). "The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." Nwachukwu v. Karl, 216 F.R.D. 176, 178 (D.D.C. 2003) (citation omitted). Because "courts [generally] view motions to strike with disfavor," a court should carefully consider whether the "portions sought to be stricken are prejudicial" to the other parties. Id.

**III.    Analysis**

In order to prevail in this "hybrid" action, Burnett must show both a breach of the duty of fair representation by his union and a breach of the collective bargaining agreement ("CBA") by WMATA.[3]  See Cephas v. MVM, Inc., 520 F.3d 480, 485 (D.C. Cir. 2008).  Thus, the absence of a genuine question of material fact in the defendants' favor on either prong is fatal to Burnett's entire claim.  Because the Court concludes that there is no genuine dispute as to whether Burnett violated the Electronic Device Policy, the Court need not reach his claim that Local 689 breached its duty of fair representation by missing the arbitration deadline.

   A.   Burnett's Contention that WMATA Breached the CBA

Burnett contends that WMATA breached the CBA by firing him for violating its Electronic Device Policy.  That policy states that WMATA "has a 'Zero Tolerance' policy regarding unauthorized use of Electronic Devices while Operating Metro revenue vehicles, and—unless a Hands-Free Device is used—while Operating non-revenue vehicles and personal vehicles on Metro property."  Kelly Aff. Ex. 2 § 2.01.  A "Hands-Free Device" is defined as "[a]n attachment, add-on, built-in feature or addition to a mobile-telephone or other Electronic Device that, when used, allows for the free use of hands for other actions."  Id. § 3.02. This definition includes a device that "requires the use of hands to initiate or terminate a telephone

---

[3] Before addressing the merits of the cross motions, the Court must clarify the basis for its jurisdiction.  The Court suggested in its decision denying the union's motion to dismiss that this action arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. WMATA Mot. Summ. J. 5 (citing Burnett, No. 13-cv-1795, at *3).  As WMATA points out, that is not quite accurate.  While courts have found, and counsel for WMATA conceded at the hearing, that federal labor law guides cases against the Authority, e.g., Jordan v. Wash. Metro. Area Transit Auth., 548 A.2d 792, 796 (D.C. 1988) (applying federal labor law to hybrid actions), the basis for the Court's jurisdiction here is the original jurisdiction that federal district courts enjoy over all actions brought against WMATA, D.C. Code § 9-1107.01; see also Dove v. Wash. Metro. Area Transit Auth., 402 F. Supp. 2d 91, 94 (D.D.C. 2005) aff'd, No. 05-7118, 2006 WL 7136123 (D.C. Cir. Mar. 13, 2006).

call or to turn the device on or off." Id. In other words, the policy allows a driver to use his hands to initiate or terminate a call but otherwise requires that the driver's hands be free to operate his car while he is on the phone. The penalty for violating the policy, even for a first offense, is discharge. Id. § 6.02(a).

The Court finds that Burnett has not raised a genuine issue of material fact regarding his alleged violation of the policy. In particular, Burnett has not put forward evidence to dispute the fact that he was holding his cell phone up to the side of his face. Indeed, Burnett acknowledged in his written statement the night of the incident that he was "calling a supervisor" and "using [his] cell." Burnett Dep. Ex. 3.[4] And even if the phone was "on speaker," as Burnett claims in his union grievance, id. Ex. 6, he never disputes Kelley's testimony that he was holding the phone next to his face.[5] In fact, he refused to provide any explanation whatsoever in his deposition. And although Burnett denies vaguely in his subsequent affidavit that he was "using [his] cell phone as Mr. Kelly [sic] claimed," the Court will strike this affidavit from the record for the reasons discussed below. Thus, there is no evidence currently in the record to contradict Kelley's testimony that Burnett held the phone next to his face.

---

[4] While the Court expressed doubt in its prior opinion about whether Burnett actually made the written statement originally submitted by Local 689, Mot. Dismiss Ex. 1, as noted above, Burnett has not disputed the testimony of Melvin Smith—the WMATA official who questioned him the night of the incident—that Burnett wrote out the statement before Smith signed it. See Smith Dep. 65:13-20.

[5] Moreover, Burnett acknowledged in his written grievance that he was using his cell phone. Local 689 Mot. Summ. J. Ex. 4 ("I was in the process of calling Mr. Ware who is a supervisor on our shift to let him know I was in the yard and that I would be late. The phone was on speaker as I was driven [sic]. I never got to speak to him as I pulled up and I made it to the time check on time."). Here, as well, Burnett does not allege that he did not have his phone in his hand.

7

Burnett's admitted use of the phone, then, combined with Kelley's undisputed testimony, establishes a clear violation of WMATA's "Zero Tolerance" policy regarding the unauthorized use of Electronic Devices.  It is true that the policy allows a driver of a personal vehicle on Metro property to use a Hands-Free Device while talking on a cell phone; that a speakerphone qualifies as a Hands-Free Device; and that a person may use his hands to initiate a telephone call.  Kelley Dep. Ex. 2.  The policy, however, does not allow a driver to operate or talk on a cellphone while holding it to his head—the functional equivalent of not using a Hands-Free Device at all.  A driver who uses his phone in that manner, even on speaker, is not using a Hands-Free Device within the meaning of the Electronic Device Policy.

Burnett raises four arguments in response to Defendants' summary judgment motions.  He first argues that his cell phone "was a hands-free device," Pl's. Opp'n Defs.' Mot. Summ. J. ¶ 14, simply because it has a "built-in feature . . . that, when used, *allows for* the free use of hands or other actions . . . , including speakerphone," Pl.'s Reply Defs.' Opp'n ¶ 1 (emphasis in original).  In other words, Burnett contends that because his cell phone has a speakerphone function—and is *capable of being used* without hands—the phone itself qualifies as a hands-free device.  Burnett therefore claims that he fell within the "Hands-Free Device" exception in the policy regardless of how he was actually using the phone.  This argument borders on the frivolous.  Such a reading ignores the stated purpose of the policy to "allow[] for the free use of hands for other actions" and prohibit employees from using their hands to make calls rather than control their vehicle.

Second, Burnett advances an alternative legal argument that the entire policy is void because "WMATA rules are void in Maryland if they conflict with Maryland law."  And he contends that Maryland law at the time was more permissive regarding driving with a hands-free

8

device.  See Pl.'s Mot. Summ. J. ¶ 38.  In support, Burnett cites the section of the interstate

compact establishing WMATA, which provides:

> In the event that any such rules and regulations contravene the laws, ordinances, rules, or regulations of a Signatory or any political subdivision thereof which are existing or subsequently enacted, these laws, ordinances, rules, or regulations of the Signatory or the political subdivision shall apply and the conflicting rule or regulation, or portion thereof, of [WMATA] shall be void within the jurisdiction of that Signatory or political subdivision.

D.C. Code § 9-1107.01(76)(e).  This provision is irrelevant to the policy Burnett allegedly

violated.  The section is entitled "Police" and concerns the establishment and authority of Metro

Transit Police.  The "rules and regulations" referenced in the cited subsection concern "the safe,

convenient, and orderly use of the Transit facilities."  Id.  The significance of those rules and

regulations is that any person violating them "shall be subject to arrest and, upon conviction by a

court of competent jurisdiction, shall pay a fine of not more than $250 and costs."  Id.  This

provision therefore constrains WMATA's authority to arrest and fine individuals on Metro

property based on rules that conflict with state or local law.  But WMATA did not attempt to

arrest Burnett for something that was not illegal in Maryland.  It fired him for violating a safety

standard higher than the legal minimum which it imposes on employees repairing and operating

its buses and trains.  Nothing in Section 76 prohibits WMATA from doing so.  The Electronic

Device Policy therefore fully applied to Burnett.

       Third, Burnett argues that Kelley's testimony "cannot possibly believed."  Pl's. Mot.

Summ. J. ¶ 15; see also Pl's. Opp'n Defs.' Mot. Summ. J. ¶ 18 (claiming that detailed analysis

shows "that Kelley [sic] testimony is simply unbelievable").  Burnett appears to base this

argument on the contention that "it was completely dark" outside at the time of the incident, Pl's.

Mot. Summ. J. ¶ 10; that "Mr. Kelley swears that Plaintiff was operating his car at a 'high rate of

speed,'" id. ¶ 11; and that he "has tinted glass in all window glass except the front windshield,"

9

id. ¶ 12. Burnett does not ask the Court to assess Kelley's credibility as a witness; rather, Burnett attempts to raise a dispute of fact by contending that it is physically impossible to observe an illuminated cell phone through a tinted car window, at nighttime, when that car is traveling quickly. The record, however, does not support an inference that observing the use of an illuminated cell phone in these circumstances would be impossible. In the first place, while there is some photographic evidence that Burnett's car had tinted windows, see Kelley Dep. Ex. 5, there is nothing remotely impossible about observing an illuminated cell phone through tinted windows, see, e.g., United States v. Clark, 2006 WL 3490298, at *1 (D.N.J. Dec. 1, 2006) (accepting police officers' account that they saw a cell phone keypad illuminate the interior of a vehicle through tinted windows). To the contrary: Common sense suggests that it would be easier to observe an illuminated cell phone at night than during the day. Moreover, the record contains no support for Burnett's counsel's speculation that the car was traveling at least 40 miles per hour, Pl's. Mot. Summ. J. ¶ 11, which is the basis for Burnett's contention that he was driving too fast for Kelley to have seen him using the phone. As a result, there is insufficient evidence to support a claim that it was physically impossible for Kelley to observe Burnett's cell phone use.

     Fourth, Burnett claims that his "phone records prove conclusively" that he was not using his cell phone at the time of the incident. Pl's. Opp'n Defs.' Mot. Summ. J. ¶ 18. This argument directly contradicts Burnett's repeated admissions that he was in fact using his phone. See Burnett Dep. Ex. 3, 6. In any event, the Electronic Device Policy does not limit "use" to completing a call or actually speaking to another person. Using an electronic device may involve "[o]perating one or more of the device's functions," Kelley Dep. Ex. 1 § 3.05(a), which includes many actions that may not show up on a user's cell phone bill. Indeed, Burnet acknowledges

that he never completed the call that he placed to his supervisor, Burnett Dep. Ex. 6, which would explain why it might not have appeared on his bill.  Burnett's phone records, therefore, would not create a genuine dispute of material fact as to whether he was "using" his phone within the meaning of the Electronic Device Policy.

   B. <u>Burnett's Affidavit</u>

  Burnett attempted to supplement the evidentiary record by filing an affidavit along with his reply to WMATA's opposition to his summary judgment motion.  The affidavit concerns his work at WMATA, the events leading to his termination, and his purported damages.  Burnett's counsel undoubtedly thought this affidavit was necessary given his instruction to Burnett not to answer any questions at his deposition regarding anything that happened on WMATA property on the night of June 12, 2012.  Burnett Dep. 40:10–41:2.  The basis for asserting Burnett's Fifth Amendment privilege is tenuous—at the hearing counsel could not identify any law that would be breached by Burnett's alleged actions or any threatened prosecution by the Maryland authorities.  But even assuming a proper basis for invoking the Fifth Amendment, Burnett's submission of an eleventh-hour affidavit was too clever by half: he cannot use the right against self-incrimination as a shield to avoid being questioned in a civil deposition and then, after discovery closed, offer an affidavit on the same subject matter as a sword to create a genuine issue of material fact.  See <u>United States v. $133,420.00 in U.S. Currency</u>, 672 F.3d 629, 641 (9th Cir. 2012) ("By striking testimony that a party shields from cross-examination, a court can respect the witness's constitutional privilege against self-incrimination while still preventing the witness from using the privilege to 'mutilate the truth a party offers to tell.'" (quoting <u>Lawson v.</u>

Murray, 837 F.2d 653, 656 (4th Cir. 1988)).  Because the defendants did not have an opportunity to test the assertions in the affidavit, fairness requires that the Court strike it from the record.[6]

## IV.     Conclusion

Accordingly, the Court will grant Defendants' Joint Motion to Strike and Defendants' Motions for Summary Judgment, and it will deny Plaintiff's Motion for Summary Judgment. The Court will issue an order consistent with this opinion.

Date:    September 21, 2015

CHRISTOPHER R. COOPER
United States District Judge

---

[6] Even if the Court were to consider Burnett's affidavit, it would not find that it creates a genuine question as to whether Burnett was holding his phone.  In the affidavit, consistent with his argument that the Court should look to the nature of the phone, not its use, Burnett stated "[m]y cell phone is a hands-free device."  While he added that he "was not using [his] cell phone as Mr. Kelley claimed in his report," Burnett Aff. ¶ 7, he again fails to deny holding the phone or claim that his hands were free to drive his car.  Burnett's ambiguous, conclusory statement would not create a question of material fact regarding whether he violated the Electronic Device Policy.